951 F.2d 349
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Leroy M. GILL, Plaintiff-Appellee,
v.
Ronald L. KONCZALSKI and Moco Thermal Industries, Inc.,
Defendants-Appellants.
 No. 91-1444.
 United States Court of Appeals, Sixth Circuit.
 Dec. 10, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and GODBOLD, Senior Circuit Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Moco Thermal Industries, Inc. and its president, Ronald L. Konczalski, appeal the district court's denial of a motion for reconsideration of its order granting plaintiff's motion for preliminary injunction. For the following reasons, the judgment of the district court is affirmed.
 
 I.
 
 2
 Moco Thermal Industries seeks to terminate retiree health insurance benefits of those former employees currently receiving them. About seven former executives of Moco, including its former president, Leroy M. Gill, are provided health care benefits pursuant to an agreement between Moco and Blue Cross/Blue Shield of Michigan. On August 29, 1990, Moco announced its intention to terminate the plan as to the retirees effective January 1, 1991. Moco cited the escalating cost of these benefits as the primary factor supporting its decision. Plaintiff brought this action under the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, to halt the planned termination of his health insurance coverage.
 
 
 3
 On December 27, 1990, the district court issued a temporary restraining order prohibiting Moco and its president, Ronald L. Konczalski, from terminating the health insurance coverage of its retirees. Plaintiff then moved to convert the restraining order to a preliminary injunction. In response, Moco argued that Gill could establish no vested right under ERISA to continuing welfare benefits and that the only means plaintiff had of establishing entitlement to continued benefits was the language of the "plan document," which, according to Moco, allowed the company to cancel the agreement upon thirty days' written notice to Blue Cross.
 
 
 4
 The district court agreed with Moco that its decision on the question of the company's authority to terminate retiree benefits must be guided solely by the language of the plan document and that, in this case, the plan document was the group operating agreement between Moco and Blue Cross. The court disagreed with Moco's interpretation of the document, however, and determined that Gill had shown a substantial likelihood of success on the merits based on its reading of paragraph 11 of the group operating agreement. Paragraph 11 states: "This agreement may be cancelled or amended by Blue Cross and Blue Shield of Michigan following thirty (30) days' written notice to the Group, or may be cancelled by the Group following thirty (30) days' written notice to Blue Cross and Blue Shield of Michigan." The district court emphasized that while the plan authorized cancellation of "the Group," Moco sought to cancel coverage of only a part of the group, the retirees, although the group included both the retirees and the active employees. Thus, absent a reservation in the plan of the right to terminate retiree benefits without terminating or canceling the benefits of the entire group, Moco had no authority to cancel coverage only as to its retirees. Based largely upon the foregoing reasoning, the district court entered a preliminary injunction enjoining Moco from terminating the retirees' health coverage unless coverage for the entire group was cancelled.
 
 
 5
 Moco moved for reconsideration, citing evidence it had obtained since the hearing on the motion for preliminary injunction. Specifically, Moco represented that it had discovered that there actually were three separate agreements with Blue Cross covering three distinct groups: active salaried employees, eligible retirees, and plant employees. The district court denied the motion to reconsider in a summary order dated March 12, 1991, and appeal is taken from that order which we treat as an interlocutory appeal from the entry of the preliminary injunction.
 
 II.
 
 6
 Four elements must be considered and balanced in deciding whether to issue or withhold a preliminary injunction: 1) whether movant has demonstrated a strong or substantial likelihood of success on the merits; 2) whether the movant has shown irreparable injury; 3) whether the preliminary injunction could harm third parties; and 4) whether the public interest is served by issuing the preliminary injunction. Frisch's Restaurant, Inc. v. Shoney's Inc., 759 F.2d 1261, 1263 (6th Cir.1985). These criteria do not comprise a rigid or comprehensive test for injunctive relief but are factors to be considered and balanced. Id. Our standard of review is whether the district court abused its discretion in granting the motion for preliminary injunction. Id.
 
 III.
 
 7
 ERISA requires that every employee benefit plan be established and maintained pursuant to a written instrument. 29 U.S.C. § 1102(a)(1); see also Musto v. American Gen. Corp., 861 F.2d 897, 900-01 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989). Unlike retiree pension plan benefits, ERISA created no federal right to continued or vested rights in a nonunion, noncontributory retiree welfare plan. In re White Farm Equip. Co., 788 F.2d 1186, 1192-93 (6th Cir.1986). However, parties may "set out by agreement or by private design, as set out in plan documents, whether retiree welfare benefits vest, or whether they may be terminated." Id. at 1193.
 
 
 8
 "Our starting point for determining the plaintiffs' rights under the group insurance policies is the actual language of the policies." Musto, 861 F.2d at 900. The district court's ruling was premised on the language of paragraph 11 of the group operating agreement between Moco and Blue Cross. This section provides that either Blue Cross/Blue Shield or the group may cancel the agreement on thirty days' written notice to the other party. Moco argues, relying primarily upon Musto, that this paragraph creates an unambiguous and express right to terminate the health care coverage of its retirees.
 
 
 9
 In Musto, 861 F.2d at 914, this court examined both the plan documents and the summary plan description booklets distributed to employees. In finding an unambiguous reservation by the employer of a right to amend or discontinue plan coverage, we relied on various passages in the plan document. As an example, one stated:
 
 
 10
 This Policy, or any insurance coverage hereunder, may be amended or discontinued at any time by an announcement duly published by the Company. The Company reserves the right to determine new premium contributions from time to time and at any time. Termination of this Policy, or any insurance coverage hereunder, or any amendments hereto shall not require individual notice to any such person.
 
 
 11
 Id. at 901-02. Moreover, in reviewing the summary plan descriptions in Musto, we found nothing to alter the provisions of the plan document, as the company expressly reserved the right to "change the Plan and, if necessary, discontinue it." Id. at 904.
 
 
 12
 This decision is not authority for the defendants' conclusion that the district court abused its discretion in determining that plaintiff had established a reasonable likelihood of success on the merits. The language of paragraph 11 of the group operating agreement in this case is not an unambiguous reservation of a right of termination or amendment of the welfare benefits of certain members of the group covered, specifically the retirees. At most, the plan document expresses Moco's right to cancel its policy with Blue Cross covering active employees and retirees alike; of the coverage to be provided only the retirees in the future, the document says nothing.
 
 
 13
 The district court found that the plan document appeared to grant "no authority" to Moco to cancel health coverage for the retirees only, and that there was therefore considerable likelihood that plaintiff would succeed on the merits of its claim. The court further found that "there is no question but what [sic] termination of medical benefits constitutes irreparable injury," particularly given plaintiff's age and the difficulty older people have finding adequate health coverage; that there was no "great harm to the defendant" given the relatively small cost to the corporation of the health insurance premiums for retirees; and that ERISA expressed a public policy to protect participants in employee benefit plans from wrongful termination of health benefits. On this record, we find no basis to conclude that the district court abused its discretion in issuing a preliminary injunction to enjoin the planned termination of health care coverage to retirees.
 
 
 14
 Neither did the district court abuse its discretion in denying defendants' motion for reconsideration. The district court made its decision to issue the preliminary injunction based upon the evidence presented to it. There is no suggestion in the record or in the briefs on appeal that the three separate group agreements defendant claims to have found since the injunction was issued, and which form the basis of Moco's new theory, were unavailable to the company at the time of argument on the motion for preliminary injunction. The district court was well within its discretion in refusing to entertain defendants' new theory on a motion for reconsideration. Defendants retain the right, of course, to present all relevant and admissible evidence upon the final hearing of this matter.
 
 III.
 
 15
 For the foregoing reasons, we AFFIRM the district court's issuance of a preliminary injunction enjoining Moco's termination of retiree welfare benefits and its denial of defendants' motion for reconsideration.